UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| KIMBERLEY E. O'BRIEN, | ) | |
|---|---|---|
| Plaintiff, | ) | No. 12 C 01201 |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| KEVIN ANDERSON | ) | |
| Defendant. | ) | |

ORDER

The first pretrial conference session was held on March 19, 2013. This Order summarizes the Court's rulings on the parties' motions in limine, some discussed in court, but many ruled on the filings and explained below.

I. **Plaintiff O'Brien's Motions in Limine**

A. **Motion in Limine No. 1: to Preclude Defendant's Exhibits 112 and 291 Regarding Plaintiff's Business Attorney**

Plaintiff moves to bar Defendant's Exhibits 112 and 291, which comprise correspondence between Plaintiff and her business attorney, Michael Tang. As explained in open court, this motion is granted in its entirety. Defendant argues that these exhibits are probative of Plaintiff's damages for "loss of normal life," as well as of her relationships with other men during the time that she alleges she was being abused by Defendant. But Plaintiff is not obligated to show that she was not able to function *at all* in order to recover damages for "loss of normal life" under Illinois law. Rather, the term "loss of normal life" is defined as a plaintiff's diminished ability to enjoy life that she has experienced, which includes her temporary or permanent inability to pursue pleasurable aspects of life, such as recreation or hobbies. *Smith v. City of Evanston*, 631 N.E.2d 1269, 1279 (Ill. App. Ct. 1994); *see also Jones v. Chicago Osteopathic Hosp.*, 738 N.E.2d 542, 554 (Ill. App. Ct. 2000) ("The term 'loss of normal life' has almost universally been interpreted as a component of disability which compensates for a change in the plaintiff's lifestyle."(internal citations omitted)). Moreover, to the extent that Defendant seeks to introduce the exhibits as evidence of Plaintiff's alleged adulterous relationship with Tang, the exhibits do not come close to having a tendency to prove adultery, and so that speculative use of the exhibits is barred as irrelevant. Accordingly, the motion is granted.

**B. Motion in Limine No. 2: to Preclude Defendant's Exhibits 268-269, 292-293, and 297**

The Court will address Plaintiff's objections to certain exhibits in turn, but first makes the following general rulings. First, to the extent that Plaintiff raises any foundation objections to these exhibits, those objections are overruled. For instance, Plaintiff argues that Exhibits 268-269 reveal only part of the email threads in question, and therefore, there is a lack of foundation. But foundation simply requires that the exhibits being offered into evidence are what they purport to be. Fed. R. Evid. 901. This requirement is satisfied so long as Defendant can testify from personal knowledge that the exhibits are what they purport to be. In other words, testimony from personal knowledge is sufficient to lay foundation for admissibility purposes. Of course, Plaintiff may still argue to the jury that the exhibits are not authentic because pieces are missing, but that will be for the jury to ultimately decide. So there is sufficient foundation for Defendant to present the exhibits to the jury.

Second, to the extent that these exhibits (or any evidence presented by either party) are intended to prove Plaintiff's past sexual behavior or predisposition, the Court sets the following parameters: Rule 412 of the Federal Rules of Evidence dictates that in civil cases involving alleged sexual misconduct, evidence of a victim's sexual behavior or sexual predisposition is prohibited unless the probative value substantially outweighs the danger of harm to any victim and the danger of unfair prejudice to any party. Fed. R. Evid. 412(a). Here, there is danger on both sides to admitting evidence of sexual behavior or predisposition that is not specifically tied to the alleged sexual assault at issue—that is, the assault at issue involved bondage and sadomasochistic sexual activity or "BDSM" activity between the parties. Evidence of the parties' *non-*BDSM sexual activity or predisposition presents a danger that the jury might decide the case on general character or likeability grounds or draw unwarranted inferences from sexual behavior and sexual predisposition that Rules 412, 401, and 403 are designed to prevent. To avoid this potential prejudice, evidence of non-BDSM sexual activity that did not occur between the parties themselves will be excluded.

Targeted evidence that is directly probative of the parties' participation or interest in BDSM sexual activity, on the other hand, is admissible, regardless of whether the activity took place with other people, or before or after the couple's relationship. There is no time period limitation on the admissibility of BDSM-related evidence, since evidence that the parties participated in BDSM activity *after* the alleged sexual assault would still be probative of the parties' consent and interest. Moreover, evidence of non-BDSM sexual activity that occurred between the parties themselves is admissible to establish some background on the parties' relationship, but may not be used to argue to the jury that participation in traditional or *non-*BDSM sexual activity is evidence of consensual or non-consensual BDSM sexual activity, with one limited exception. Photographs taken of Plaintiff on the morning after the alleged

sexual assault are admissible—notwithstanding the fact that they do not reflect BDSM-related sexual activity—to rebut the Plaintiff's contention that the BDSM activity of the night before was non-consensual. *See, e.g.*, Def.'s Exh. 218.

There is one other caveat to the general rule against evidence of non-BDSM sexual activity: Defendant may offer evidence of the Plaintiff's engagement in non-BDSM sexual activity (both with him and with other parties) for the limited purpose of proving his state of mind, which is relevant to the intentional infliction of emotional distress claim. Thus, for example, the Defendant may testify from personal knowledge that Plaintiff told him about her past sexual activity, which supposedly led Defendant to believe that Plaintiff would consent to BDSM activity. The jury will be carefully instructed that any testimony from Defendant as to the Plaintiff's non-BDSM activity may only be considered to show Defendant's state of mind, *not* to show that Plaintiff *in fact* consented to BDSM activity (which would run afoul of the Rule 412, 401, and 403 ruling above).

With these principles in mind, the Court now turns to the specific objected-to exhibits:

Defendant's Exhibits 268-269 are emails allegedly sent from Plaintiff's AOL account. For the reasons explained above, Plaintiff's objections to foundation are rejected. But because the exhibits are not probative of the Plaintiff's intent or participation in BDSM sexual activity, these exhibits are excluded. Exhibit 293, which Defendant offers to show Plaintiff's interest in a German escort service, is excluded for the same reason.

Defendant's Exhibits 292 and 297 are handwritten notes of Plaintiff's conversation with her attorneys, to-do lists, and the names and phone numbers of certain contacts. Defendant argues that these exhibits are probative of Plaintiff's damages (that is, her ability to conduct daily activities), as well as of her relationships with other men. Plaintiff objects based on lack of foundation, attorney-client privilege, and Rule 403. First, Plaintiff's objection to foundation is rejected. As discussed above, any foundation dispute can be carried over to be decided by the jury, so long as one party can testify with personal knowledge as to the exhibit's authenticity. Second, to the extent that Exhibits 292 and 297 reveal any notes taken by Plaintiff from conversations she had with counsel, those parts are protected by attorney-client privilege. *See, e.g.*, *Thomas v. Euro RSCG Life*, 264 F.R.D. 120, 122 (S.D.N.Y. 2010) (employee's notes of conversations with in-house attorney subject to attorney-client privilege); *see also Smithkline Beecham Corp. v. Apotex Corp.*, 193 F.R.D. 530, 534 (N.D. Ill. 2000) (question in determining whether attorney-client privilege applies is whether document in question reveals, directly or indirectly, the substance of a confidential attorney-client communication). Third, the handwritten to-do lists are inadmissible to prove Plaintiff's lack of loss-of-normal-life damages because, as

discussed above, the Plaintiff is not required to show that she was unable to function at all to recover damages for loss of normal life. Evidence that she was still running day-to-day errands after her relationship with Defendant ended is irrelevant to her loss of normal life damages and is excluded. Finally, to the extent that Exhibits 292 and 297 are being offered to show the Plaintiff's interactions with other men (supposedly adulterous interactions), that evidence is speculative and irrelevant. This evidence is also independently inadmissible under the Court's ruling that evidence of non-BDSM sexual activity with other parties is unduly prejudicial and not admissible.

Accordingly, the Plaintiff's motion to exclude Defendant's Exhibits 268-269, 292-293, and 297 is granted in its entirety.

### C. Motion in Limine No. 3: to Preclude Defendant's Exhibits 272-282

Plaintiff moves to bar Defendant's Exhibits 272 through 282, which are recordings of voice-mail messages she left on Defendant's cell phone. For the reasons stated in open court, this motion is denied. Plaintiff's foundation objections are rejected; so long as Defendant can testify with personal knowledge that the recordings are accurate renderings of the voice-mail messages he received from Plaintiff, the exhibits are admissible. As for relevancy, based on the messages' content, some of the messages are relevant to show that Plaintiff did not want to divorce Defendant even after the alleged incidents of abuse, which goes both to liability and damages. (The Court invited Plaintiff to make a more specific relevancy objections to specific messages, but she did not do so.)

### D. Motion in Limine No. 4: to Preclude Defendant's Exhibits 259-267

Plaintiff moves to bar Defendant's Exhibits 259-267, which are email communications between her and Defendant around the time that divorce papers were served. This motion is denied. For the reasons already discussed, Plaintiff's foundation objections are overruled. Defendant's testimony and circumstantial proof are sufficient to lay a foundation for these exhibits, though Plaintiff may still challenge the authenticity of the exhibits, or argue that they are taken out of context, to the jury.

### E. Motion in Limine No. 5: to Bar Reference to Plaintiff's Alleged Cocaine Abuse

Plaintiff seeks to bar any reference to her alleged cocaine abuse. This motion is granted in large part. The references to Plaintiff's cocaine use appears in two different exhibits: Defendant's Exhibit 306, which is a Lincoln Park Hospital record from August 5, 2005, and Exhibit 309, which is a 1996 record from the University of Pittsburgh Medical Center. As stated in open court, the references in these records—by themselves—to cocaine abuse are so speculative as to have very little relevance to the

issues in this trial. Moreover, any probative value that these references—standing alone—do have is substantially outweighed by the risk of unfair prejudice to the Plaintiff. Before the Court definitively rules on this issue, however, Defendant will be given a chance to make an offer of proof as to what other evidence, if any, he can offer as to the extent of Plaintiff's cocaine or alcohol abuse, and how that alleged abuse caused Plaintiff to have violent or unstable outbursts.[1] This issue will be discussed at the second session of the pretrial conference.

There is, however, at least one admissible aspect of Defendant's Exhibit 306. The Lincoln Park Hospital record from August 2005 reveals that the Plaintiff answered "no" in response to the question, "Are you being hurt by someone you live with or who takes care of you?" Because Plaintiff and Defendant were still living together in August 2005, this specific part of the record may be offered by Defendant to rebut the argument that Plaintiff was abused during their marriage. Subject to the offer of proof, the remaining parts of the hospital record must be redacted, because the circumstances of Plaintiff's visit to Lincoln Park Hospital are themselves irrelevant.

### F. Motion in Limine No. 6: to Preclude Defendant's Exhibit 107 and Evidence Concerning Plaintiff's Prior Marriage and Relationship

Plaintiff moves to bar Defendant's Exhibit 107, as well as any evidence of her prior marriage and relationships. This motion is granted along the lines already discussed regarding evidence of BDSM versus non-BDSM sexual activity. Exhibit 107 is a memorandum written by a private investigator containing hearsay statements about Plaintiff's prior relationships and sexual proclivities. Because nothing in this record goes to prove Plaintiff's knowledge or interest in BDSM-type sexual activity, the exhibit is excluded.

### G. Motion in Limine No. 7: to Preclude Any Reference to Plaintiff's Past as an Escort or Stripper.

The same reasoning that applies to Plaintiff's non-BDSM sexual activity also applies to Plaintiff's Motion in Limine No. 7. Specifically, evidence of Plaintiff's past job history as an escort or stripper is inadmissible if the evidence is not specifically probative of her interest in or knowledge of BDSM activity. But to the extent that Defendant can testify that he had personal knowledge of Plaintiff's past (for example, if Plaintiff told him about it) and that the knowledge affected his state of mind (for

---

[1] Defendant's Exhibit 309 also contains deposition exhibits and psychiatric evaluations by Dr. Dube regarding the Plaintiff's sexual nature and bipolar disorder. To the extent that these exhibits are being offered to show the Plaintiff's sexual predisposition, they are excluded.

5

example, led him to believe that she would consent to BDSM activity), that testimony is admissible.

## II. Defendant Anderson's Motions in Limine

### A. Motion in Limine No. 20: to Bar (1) Evidence of the Value of Twin States Music, Other Than What Was Disclosed in Response to Financial Discovery; and (2) Documents Related to the "2006 Financial Evaluation Report"

Defendant moves to limit the evidence of Twin States's financial value to the evidence that Defendant disclosed during discovery. During discovery, the Court limited the scope of discovery requests on this issue to January 1, 2010 to the present because Defendant's wealth is relevant only to punitive damages, and specifically only his current wealth is relevant. Plaintiff argues that pre-2010 evidence is relevant to show Defendant's "truthfulness in responding to discovery regarding his new worth." R. 135 at 5. Discovery disputes will not be tried before the jury; those disputes are is neither relevant nor (even if relevant) permissible under Rule 403, because the jury would have to be informed of the standards of discovery, distracting from the merits of the case. Plaintiff also argues that the evidence would show Plaintiff's financial dependence on Defendant. R. 135 at 5. But that relevance theory is weak, at best, because the dependence is measured by Plaintiff's lack of financial resources, not evidence of Defendant's wealth, whereas the Rule 403 danger is great because unlimited evidence of Defendant's wealth can lead jurors to decide the case on the basis of thinking that Defendant can 'afford' to pay Plaintiff even if jurors think the liability case is not strong. To be clear, however, the motion is granted only insofar as the time period is concerned: if Plaintiff has post-January 1, 2010 evidence of wealth, that is 'current' enough for punitive-damages purposes, even if Defendant was not the one to disclose the evidence.

### B. Motion in Limine No. 21: to Bar (1) Evidence of Defendant's Coin collection, Outside of What Was Disclosed in Response to Financial Discovery; (2) Documents Labeled KEO00234-KEO000249; and (3) Certain Documents in Plaintiff's Exhibit Chart

For similar reasons as stated in the ruling on Motion Number 20, Plaintiff will be limited again to post-January 1, 2010 evidence concerning Defendant's coin collection. Plaintiff did not tie-down in discovery the speculation that Defendant has joint ownership of coins not disclosed by Defendant. This motion is granted.

### C. Motion in Limine No. 22: to Bar Evidence or Testimony Regarding the Worth, Net Assets, Net Wealth or Wealth of the

6

**Defendant, Outside of What Was Disclosed in Response to Financial Discovery**

This motion is denied: the ruling on Motion 25 *infra* addresses Defendant's concern that Plaintiff will be arguing that Defendant did not disclose his current wealth; as explained below, that argument will be barred. But this motion tries to go further by arguing broadly that the only evidence of wealth that can be introduced is that which Defendant disclosed himself during discovery. If Plaintiff has evidence of Defendant's wealth post-January 1, 2010, the source of that evidence need not be Defendant himself.

**D.    Motion in Limine No. 23: to Bar Plaintiff from (1) Calling Gary Anderson as a Witness; and (2) Offering Evidence Regarding Gary Anderson's Deposition on June 11, 2012**; and

**E.    Motion in Limine No. 24: to Bar Plaintiff from (1) Calling Christopher Napolitano as a Witness; and (2) Offering Evidence Regarding Christopher Napolitano's Deposition on November 1, 2012**

Defendant moves to exclude two witnesses, Gary Anderson and Christopher Napolitano, whom Plaintiff deposed during discovery (and served document requests on) on the issue of Defendant's current net worth. Defendant attaches the deposition transcripts of Anderson and Napolitano, and argues that both testified that they have no knowledge as to Defendant's post-January 1, 2010 net worth. In response, Plaintiff does not point to any specific testimony to dispute the notion that Anderson and Napolitano simply do not have any relevant testimony or evidence that would help Plaintiff estimate Defendant's current net worth. The motion is granted.

**F.    Motion in Limine No. 25: to Bar Evidence of Defendant's Alleged Unreported Income**

Defendant moves to preclude evidence or testimony offered by Plaintiff in an attempt to show that he has unreported income or assets. For the reasons stated in open court, this motion is granted. Plaintiff was given a chance during the discovery period to ferret out any income or assets that Defendant is allegedly hiding. Had the Court determined that Defendant was hiding any income or assets, the Court would have required disclosure of such assets. But that discovery period is closed, and Plaintiff may not now argue that there is still some undisclosed wealth. Moreover, evidence of Defendant's wealth is only probative on the issue of punitive damages. To allow Plaintiff to raise the specter of hidden wealth, which will consume enormous time as the parties go back-and-forth in what would basically be an previously-unlitigated discovery dispute, would be time-consuming in relation to its limited relevance. Even

if the Court were to allow such arguments on punitive damages, Plaintiff would essentially be speculating as to how much wealth is hidden. Without concrete facts as to how much wealth the Defendant is supposedly hiding, the testimony would be unhelpful to the jury in deciding on an amount for punitive damages. The task of setting punitive damages is difficult enough without introducing an unspecified amount of wealth based on pure speculation. Accordingly, this motion is granted.

### G. Motion in Limine No. 26: to Bar Reference to Superior Vending v. Dick's Bar of Hudson Litigation

This motion is granted in part and denied in part. The litigation itself (a Western District of Wisconsin case) seems to have no relevance to this action, and Plaintiff does not identify any theory of relevancy. If, however, evidence or discovery in that action is relevant to this case, whether for impeachment or otherwise, then merely because the evidence was produced during discovery of that action does not disqualify it from this case. Other rules may render evidence from that action inadmissible here (for example, if it was responsive to a discovery request and Plaintiff did not disclose it), but not merely because it was generated in that action.

### H. Motion in Limine No. 27: to Bar Evidence of Defendant's Prior Felony Conviction for Maintaining Commercial Gambling Supplies

Defendant moves to bar evidence or testimony regarding his prior felony conviction for maintaining commercial gambling supplies. For the same reasons outlined above in Subsection F, this motion is granted. Plaintiff argues that the Defendant's prior felony conviction is relevant to show that the Defendant had a motive to hide his assets, but the Court's previous ruling (barring evidence or testimony of the Defendant's allegedly-hidden assets) moots this point. In any event, Plaintiff's theory that the conviction prohibited Defendant from owning commercial gambling equipment, and thus gave him a motive to park his assets in a third-party, is unsupported by the record. Defendant was only prohibited from owning gambling equipment as a condition of probation, which has since expired. And, because there is no current prohibition on Defendant's ownership of gambling equipment, the conviction provides no extra motive for Defendant to hide his assets.

Nor is there any other basis for offering the conviction into evidence. Plaintiff concedes that the conviction cannot be used to impeach Defendant's character for truthfulness under Rule 609. Accordingly, evidence of, and references to, Defendant's previous gambling conviction is excluded.

### I. Motion in Limine No. 28: to Bar Evidence Regarding Temporary Restraining Orders Filed Previously by Both Parties

Defendant moves to bar evidence that, during the divorce proceeding (which began on August 29, 2005), both sides filed motions for temporary restraining orders (which were dismissed by the state court), because the statements in the motions are hearsay if offered for the truth and are otherwise irrelevant. Plaintiff argues that the statements in the motions are corroboration of Plaintiff's claims, but the motions were filed in the context of adversarial litigation, so any non-hearsay use under Rule 801(d)(1)(B) (to rebut a charge of recent fabrication) does not apply because the motion to fabricate had already arisen. Plaintiff also responds that the motions show that she felt the emotional distress was so great that she filed for judicial relief. But that point is irrelevant so long as Defendant does not argue that Plaintiff's version of events is not credible because she failed to seek judicial relief. This situation is unlike the implicit question of physical abuse where the jury might expect that Plaintiff would have reported that abuse to the police. Jurors are not likely to think-up on their own that Plaintiff should have filed motions for TROs in the divorce proceedings, and thus if Defendant does not argue the point and open the door, the competing TRO motions shall not be introduced.

### J.     Motion in Limine No. 30: to Bar Evidence or Testimony that Defendant Set Off Burglar Alarms or Ransacked Plaintiff's House

Defendant moves to bar what he argues is speculation that Plaintiff will offer that Defendant set off burglar alarms or ransacked Plaintiff's house. In response, Plaintiff offers two police reports, one describing an October 9, 2005 entry by Defendant, the other describing an October 19, 2005 entry. But neither report supports an argument that Defendant illegally entered the house, so the motion is granted. The October 9 report specifically describes Plaintiff as admitting that Defendant was legally permitted to enter the house; she was just concerned that he had done so in the late-night hours. The October 19 report specifically describes Plaintiff as admitting that Defendant was legally permitted to be in the house when she was away from it, and that she knew he would be there on that date. Accordingly, Plaintiff is barred from trying to argue that Defendant unlawfully entered the house or otherwise ransacked it.

### K.     Motion in Limine No. 31: to Bar Evidence of Defendant's Deferred Prosecution Agreement

Defendant's motion to bar evidence of his 2006 deferred prosecution agreement is granted. As explained in open court, the deferred prosecution agreement itself is not a conviction, but would be offered to show merely that the police or the State's Attorney believed there to be sufficient probable cause to bring the case in the first place. That itself is inadmissible because it is (1) a hearsay statement (because it is offered to prove that there was probable cause); and (2) irrelevant (because Plaintiff's burden of proof is by a preponderance, not probable cause); and (3) barred by Rule 403 (because, even

9

if somehow relevant, its prejudicial effect would substantially outweigh its probative value). Accordingly, the fact of the deferred prosecution agreement is excluded, though the underlying events may be introduced into evidence.

> **L. Motion in Limine No. 32: to Bar Admission of All Police Reports, Including Statements Made to the Police**

Defendant moves to bar the admission of police reports generated from the Plaintiff's complaints to the St. Croix Sheriff's Department and the St. Paul Police. The police reports include Plaintiff's Exhibits 98, 99, 102, 105, 106, 107, 109, 110, 119, 127, and 138. Before turning to the individual exhibits, the Court makes the following general rulings:

First, as a general rule, statements contained in the reports that are made by Defendant himself constitute party admissions under Rule 801(d)(2) and thus are not hearsay.

Second, statements made by Plaintiff to the police describing incidents of the Defendant's asserted abuse are prior consistent statements—and thus hearsay if offered to prove their truth—and in this case are admissible only if they fall under one of the hearsay exceptions or are offered to rebut a charge of recent fabrication or improper motive. *See* Fed. R. Evid. 801(d)(1)(B).

And third, evidence that Plaintiff's complaints to the police resulted in an actual arrest of Defendant is inadmissible for two reasons. First, an arrest is hearsay insofar as it reflects the arresting officer's implied statement that there was probable cause to arrest Defendant. And because Plaintiff must meet the higher preponderance-of-the-evidence burden, it is irrelevant that an arresting officer believed Plaintiff's version of events and found probable cause for an arrest. Second, to the extent that the fact of arrest has any probative value, that value is outweighed by the unfair prejudice to Defendant posed by the risk that a jury may choose to align itself with the arresting officer, notwithstanding the lower burden of proof applied by the officer. With these principles in mind, the Court now turns to the individual exhibits.

Plaintiff's Exhibit 98 contains a narrative statement written by Plaintiff describing events that took place on September 22-23, 2005. These are prior consistent statements that may only be introduced if they are offered to rebut a charge of recent fabrication or improper motive. If, for example, on cross-examination of Plaintiff, Defendant argues that Plaintiff fabricated these allegations of abuse or that the lawsuit is motivated by Plaintiff's desire to extract money from Defendant, then Plaintiff may introduce Exhibit 98 on redirect to rebut this argument. Defendant may argue, however, that Plaintiff's prior consistent statements were nonetheless made at a time when she had the motive to fabricate, and that this motive was part of an

ongoing scheme that start long before the parties' marriage. But this, as explained at the pretrial conference, is a question reserved for the jury, and does not affect the admissibility of the prior consistent statement as non-hearsay under Rule 801(d)(1)(B).

Plaintiff's Exhibit 99 is a police report describing events that occurred on the morning of September 24, 2005. The report includes statements made by Plaintiff describing a violent encounter between her and Defendant earlier that morning, as well as recounting statements made by Defendant to her. Defendant's statements (as recounted in the report) are double hearsay, and may only come in if each level of hearsay is admissible under some hearsay exception or exemption. Fed. R. Evid. 805. As discussed above, Defendant's own statements are non-hearsay party admissions, and may come in. But because his statements are embedded in Plaintiff's statements, which are also hearsay, they may only come in if Plaintiff's statements independently satisfy a hearsay exception. Here, the police describe the Plaintiff as "very upset" and "crying" shortly after the alleged assault. Because Plaintiff's statements were made when she was still under the influence of the upsetting event, her statements qualify as excited utterances under Rule 803(2). Thus, both layers of hearsay fit an exception or exemption, and Exhibit 99 is admissible.

Plaintiff's Exhibit 102 is a report written by Deputy Brandie Hart of the St. Croix County Sheriff's Department on September 30, 2005, describing bruises on the Plaintiff's body. Hart's description of the Plaintiff's injuries—for example, that the Plaintiff had three "purplish green" bruises on her left leg—can come in under the public record exception, because they are factual findings made pursuant to a legally authorized investigation. Fed. R. Evid. 803(8). However, any statements that Plaintiff made to Hart, if offered for their truth, are inadmissible as prior consistent statements.

Plaintiff's Exhibit 105 is a report from October 14, 2005 describing harassing phone calls that Plaintiff received from Defendant in violation of an existing restraining order. Unlike Exhibit 102, this report does not qualify as a public record because the police officer here was essentially transcribing statements that Plaintiff made to him without making any factual findings of his own. These statements are prior consistent statements, and may only come in to rebut a charge of recent fabrication or improper motive under Rule 801(d)(1)(B).

Plaintiff's Exhibit 106 is a police report from October 20, 2005, made in response to the Plaintiff's call about the Defendant resetting the burglar alarm in her house on October 19. As explained above (Defendant's Motion in Limine No. 30), this report is excluded.

Plaintiff's Exhibit 107 is a police report documenting the Defendant's arrest on October 31, 2005 for allegedly making death threats to the Plaintiff at an Applebee's restaurant. The report narrative contains both admissible and inadmissible

statements. Any statements regarding what the Plaintiff and Defendant said to each other at the Applebee's restaurant are hearsay and double hearsay if offered for the truth, and may only come in if they meet the prior consistent statement and party opponent exemptions laid out in Rule 801. Specifically, Plaintiff's statements about her exchange with the Defendant are admissible only if Defendant challenges as a recent fabrication Plaintiff's anticipated testimony that Defendant threatened her.

The officer's observation that he heard Plaintiff's cell phone go off several times while he was speaking to her about the incident is admissible. This statement is a personal observation made during the course of a legally authorized investigation, and thus the report's recitation of the statement qualifies as hearsay under the public record exception. Fed. R. Evid. 803(9). But Plaintiff's accompanying statement—that Defendant had been calling her non-stop—is not admissible as a prior consistent statement unless there has been a charge of recent fabrication. The report states that Plaintiff "pointed out that Kevin has been calling non-stop," which can be read both to mean that Defendant had been calling her incessantly, as well as that Defendant was calling her at that very moment. To the extent that this statement implies the latter, the statement cannot come in as a present sense impression because it is not clear whether Plaintiff specifically observed that it was Defendant calling. For example, Plaintiff could have pointed out that her husband had been calling her non-stop while the phone was left ringing in her purse. Without Plaintiff's accompanying implied statement that it was Defendant calling, the police officer's observation of the phone ringing, standing alone, has no probative value.

The rest of the report describes Defendant's arrest. For the reasons already discussed above, the fact of Defendant's arrest may not come in to show that Defendant actually abused his wife. Finally, Plaintiff's "Voluntary Statement" on the last page of the police report, which describes the Applebee's incident, is inadmissible hearsay.

Plaintiff's Exhibit 109 describes another encounter between Plaintiff and Defendant at an Applebee's restaurant, this time on November 2, 2005. The entirety of this police report is a transcription of Plaintiff's statements to the police. These statements are hearsay and may only come in as prior consistent statements on redirect to rebut a charge of recent fabrication. The report otherwise contains no factual findings that the officer made in the course of his investigation; indeed, the officer was merely as a scrivener of the Plaintiff's complaint. Accordingly, the report cannot come in under the public records exception.

Plaintiff's Exhibit 110 is a report of Defendant's alleged violation of a 72-hour no contact order. As with the previous exhibit, the report contains no factual findings made by the police officer and merely transcribes statements made by Plaintiff to the police. These statements are inadmissible hearsay. The same analysis applies to Plaintiff's Exhibits 119, 127, and 138.

### M. Motion in Limine No. 34: to Bar Evidence of Defendant's Previous Arrests or Criminal Complaints

Defendant moves to bar evidence of his previous arrests or criminal complaints. For the same reasons discussed in the Court's ruling on Defendant's Motion in Limine No. 32, evidence of the Defendant's previous arrests is inadmissible. The complaints themselves are based on an officer's finding of probable case, which is itself based primarily on statements made by the Plaintiff to the police. *See, e.g.*, Pl.'s Exh. 104 ("A further basis for the aforesaid complaint is that by virtue of her complaint to law enforcement, Kimberly E. Anderson did not give anyone consent to cause her bodily harm . . . .") Accordingly, the criminal complaints are inadmissible hearsay. To the extent they are relevant at all, their probative value is outweighed by the risk of unfair prejudice.

### N. Motion in Limine No. 36: to Bar Evidence or Testimony from Linda Anderson

Defendant moves to bar evidence or testimony from his ex-wife, Linda Anderson. Specifically, Defendant seeks to bar the Plaintiff from questioning Linda Anderson about (1) the Defendant's alleged addiction to sex or pornography; (2) the findings set forth in Stephen A. Kosa's Guardian Ad Litem Report; and (3) her March 2006 motion requesting that the Defendant undergo a psychiatric evaluation for sex addiction issues. This motion is granted. Any testimony that would be offered by Linda Anderson's testimony would go to Defendant's interests in non-BDSM sexual activity. Under the Court's ruling that evidence of non-BDSM sexual activity with other parties will not be admissible, this testimony is irrelevant and will be excluded. Accordingly, Plaintiff is barred from having Linda Anderson testify about Defendant's sexual proclivities or interest in pornography.

To the extent that Defendant made statements to Plaintiff regarding his past sexual relationship with Linda Anderson, however, this evidence might be admissible as evidence of Plaintiff's state of mind, and in certain instances that might be relevant to an issue in the case. For instance, Defendant's previous sexual behavior with Linda Anderson may be probative of why Plaintiff allowed Defendant to engage in certain conduct with her (*e.g.*, he had safely engaged in BDSM activity with Linda Anderson), or why Plaintiff did not get out of the relationship sooner. This will depend on how the testimony plays out at trial.

### O. Motion in Limine No. 37, 39, 40, and 41: to Bar Evidence or References to Defendant's Sexual Predilections

Defendant's Motions in Limine Nos. 37, 39, 40, and 41 all relate to evidence of Defendant's sexual predilections. As the Court has already explained above, the

division between non-BDSM sexual activity and BDSM sexual activity applies with equal force to both parties. Thus, these motions are granted insofar as Plaintiff may not introduce any evidence or testimony that Defendant was interested in, addicted to, or engaged in non-BDSM sexual activity. However, Plaintiff may introduce evidence of Defendant's sexual behavior or predisposition that is directly related to BDSM. So, for example, Plaintiff seeks to introduce the Internet history from the computer at the couple's home located on Cove Road as evidence of Defendant's addiction to pornography. Any websites contained in this history that do not depict BDSM sexual activity is inadmissible, and must be redacted.

### P. Motion in Limine No. 49: to Bar Evidence or Testimony Related to Plaintiff's Alleged Right Breast Implant Rupture

Defendant moves to bar evidence of Plaintiff's right breast implant, which she claims was negligently ruptured by Defendant. Defendant argues that this claim is barred by the statute of limitations, which required Plaintiff to assert this claim within two years after the cause of action accrued. This argument is rejected. The statute of limitations is an affirmative defense, and should have been raised earlier in the case. Because affirmative defenses are waived if not raised in the responsive pleadings, *Walker v. Sheahan*, 526 F.3d 973, 979 (7th Cir. 2008), it is too late for Defendant now to make this argument. Moreover, the parties engaged in discovery over the breast implant issue, and allowing Defendant to raise the statute of limitations defense now would prejudice Plaintiff.

In the alternative, Defendant argues that there is no factual evidence that Plaintiff's right breast implant was actually ruptured. This argument goes to the weight of the evidence, not to admissibility. Plaintiff is entitled to present her testimony in court, and whether there is enough factual evidence to support her claim is an issue left for the jury. Accordingly, Defendant's motion to bar evidence related to the Plaintiff's right breast implant is denied.

### Q. Motion in Limine No. 52: to Bar Expert Evidence and Testimony from Dr. Green Regarding Plaintiff's Mental Disorders; In the Alternative, Motion to Preclude Dr. Green's Opinions that Plaintiff Suffers from Battered Woman Syndrome

Defendant moves to bar all testimony and reports from the Plaintiff's expert, Dr. Richard Green. In the alternative, the Defendant moves to bar Green from opining that the Plaintiff suffers from battered woman syndrome. The admission of expert testimony is governed by Federal Rule of Evidence 702 and the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Under this framework, courts must engage in a three-step analysis: (1) the witness must be qualified "as an expert by knowledge, skill, experience, training, or education," Fed. R.

Evid. 702; (2) the expert's reasoning or methodology underlying the testimony must be specifically reliable, *Daubert*, 509 U.S. at 592-93; and (3) the testimony must be relevant, that is, it must assist the trier of fact to understand the evidence or to determine a fact in issue. Fed. R. Evid. 702.

Here, the Defendant challenges both Green's qualifications as an expert, as well as the reliability of his methodology. First, Defendant' contends that Green is not qualified to testify as an expert on the Plaintiff's psychiatric condition because he is not currently licensed to practice medicine in Illinois or any other state. This argument is rejected. "It is well settled that medical experts may be permitted to testify in matters concerning which they are qualified even though they may not be licensed to practice medicine in the jurisdiction involved." *Hayes v. United States*, 367 F.2d 216, 222 (10th Cir. 1966) (citation omitted); *see also Alvarado v. Weinberger*, 511 F.2d 1046, 1049 (1st Cir. 1975) (holding that "board certification has never been held a prerequisite to qualification as an expert medical witness"). The fact that an expert does not have a degree or license in his professed specialty goes to the weight of testimony rather than its admissibility. *United States v. Bilson*, 648 F.2d 1238, 1239 (9th Cir. 1981). Thus, there is no bar on Green's testimony based on his qualification.

Whether Green's methodology is reliable, however, is a different question. In determining reliability, *Daubert* sets forth the following non-exhaustive list of guideposts: (1) whether the scientific theory can be or has been tested; (2) whether the theory has been subjected to peer review and publication; (3) whether the theory has been generally accepted in the scientific community. *Daubert*, 509 U.S. at 593-92. Here, the Defendant claims that Dr. Green's methodology in diagnosing the Plaintiff with post-traumatic stress disorder (PTSD) is unreliable because he relied on the Plaintiff's self-reports of her symptoms without inspecting her medical records, test results, or evaluations from other therapists. The record reveals that Green reviewed a large binder of factual materials, including transcripts of email communications, phone calls, and voicemail messages, the Complaint, several police reports, documents setting forth various sadomasochistic practices, an Internet history, and a photo of the Plaintiff bound and sodomized on the evening of the alleged sexual assault. R. 121, Def.'s Mot. in Limine No. 52 Exh. C (Green Dep.) 14:20-15:23; R. 151, Pl.'s Supp. Resp. to Def.'s Mot. in Limine No. 52 at 5. Green also reviewed relevant portions of the DSM-IV. Pl.'s Supp. Resp. to Def.'s Mot. in Limine No. 52 at 2. But there is no evidence in the record that Green administered any tests to the Plaintiff, though he did review a series of psychological tests performed by Dr. Ruth Kuncel. Green Dep. 24:7-24:19. Nor is there evidence that Green reviewed any of the Plaintiff's psychiatric records, despite knowing that the Plaintiff was in outpatient treatment for her PTSD. *Id.* 59:13-60:4, 44:10-44:13.

Citing to *Cooper v. Nelson & Co.*, 211 F.3d 1008 (7th Cir. 2000), Plaintiff argues that a medical expert witness may base his opinion on a plaintiff's self-reported

15

symptoms and medical history, and that reviewing additional treatment records is helpful but not necessary in diagnosing PTSD. Pl.'s Supp. Resp. to Def.'s Mot. in Limine No. 52 at 7-8. Although it is true that a medical expert of course may consider a plaintiff's self-report, *Cooper* does not entirely support Plaintiff's position that the expert may simply disregard the plaintiff's other relevant medical records. In *Cooper*, the Seventh Circuit held that a medical expert's testimony should not be excluded under *Daubert* solely on the ground that his diagnosis was based on the patient's self-reported history. 211 F.3d at 1021. *Cooper* reasoned that exclusion was not warranted because the expert had employed an acceptable diagnostic tool (that is, performing a physical examination of the patient, and evaluating the patient's physical history as related by the patient). *Id.* Thus, *Cooper* does not stand for the proposition that self-reported statements alone serve *automatically* as a sufficient basis for admitting expert testimony. Rather, it stands for a narrower rule, that self-reported statements do not in and of themselves render an expert's testimony inadmissible, so long as the expert used an acceptable diagnostic tool in arriving at the expert's opinion.

Similarly, in *Walker v. Soo Line Railroad Co.*, 208 F.3d 581 (7th Cir. 2000), the court held that a psychologist could testify about the plaintiff's post-incident IQ where the expert's evaluation relied on the plaintiff's self-reported medical, educational, and professional histories, as well as the expert's administration of the National Adult Reading Test. Here again, the Seventh Circuit did *not* hold that a patient's self-reported medical history alone is *automatically* a sufficient basis for forming a medical opinion, because the expert there also administered a test specifically designed to estimate a person's IQ before that person suffered a trauma.

Finally, in *United States v. Miranda*, 2007 WL 2874017 (N.D. Ill. Sept. 24, 2007), the court stated that

> [g]enerally, if a psychiatrist bases her testimony not only on a patient's self-reported history *but also on either additional tests, interviews, third party corroboration or interpretation guided by professional resources*, then that is sufficient to meet the standard for admissability. . . . There is no uniform requirement of how many tests should be done or sources consulted in making a valid psychiatric diagnosis—since that will depend on the facts and circumstances of each case—and thus the court has wide discretion to determine admissibility.

*Id.* at *6 (emphasis added). Thus, *Cooper*, *Walker*, and *Miranda* suggest that a patient's self-reported history may be part of a medical expert's basis for arriving at a diagnosis, but it cannot be the only basis. Accordingly, without any evidence that Green used any diagnostic tool in arriving at the diagnosis, such as a psychiatric test—or even reviewing Plaintiff's *existing* psychiatric records—the Court holds that

Green did not employ a reliable methodology under *Daubert*. Accordingly, the Defendant's motion to exclude testimony from Green is granted.

### R. Motion in Limine No. 53: to Bar Testimony Regarding the Quit Claim Deed for the Property Located at 270 Cove Road in Hudson, Wisconsin

Defendant moves to bar testimony concerning what Plaintiff contends is Defendant's execution of a quit claim deed for 270 Cove Road in Hudson, Wisconsin. Plaintiff argues that Defendant lured Plaintiff to stay in the relationship (this was before the marriage) by lying about his intention to add Plaintiff to the ownership of the property, and that Plaintiff contributed financially to the property. But during the divorce proceeding, the state court found against Plaintiff on this point, finding that Plaintiff had no legal claim to the property, and that decision operates as issue preclusion. In any event, even if Plaintiff's version of facts underlying the deed is accurate, that type of conduct cannot form the basis for an intentional infliction of emotional distress claim, which requires much more egregious conduct under Illinois law. The motion is granted.

### S. Motion in Limine No. 54: to Bar Evidence of Assets and Financial Information from the Divorce Decree

For the same reasons why defense motions 20, 21, and most importantly 25 (the unreported-income motion) were granted, this motion is granted. Plaintiff cannot introduce speculation about Defendant's current wealth by relying on the evidence of wealth during the 2005 through February 2008 divorce proceeding.

### T. Motion in Limine No: 55: to Bar Reference to Temporary Restraining Orders in the Divorce Decree

Defendant moves to exclude the restraining order that concluded the divorce proceeding (it is unclear why this order was referred to as "temporary") in 2008. In the divorce proceeding, the final judgment stated, "As part of the divorce judgment, a provision be include restraining both parties from having any contact with the other party and restraining both parties from interfering with the personal liberty of the other." Plaintiff responds that this restraining order shows "the continuing nature of abuse being alleged by Plaintiff" and tells the story of the relationship after the divorce. R. 139 at 9. Those are insufficient grounds of relevancy: the restraining order applied to both parties and Plaintiff does not point to any evidence that the state court was premising the order on continued abuse. And the "story" of the parties' relationship after the divorce has no independent relevance on its own. The motion is granted.

17

U.  **Motion in Limine No. 60: to Include Evidence of Plaintiff's Sexual Behavior and Sexual Predisposition**

For the reasons already discussed in the Court's ruling on Plaintiff's Motion in Limine No. 2 in Subparagraph B above, this motion is granted in part and denied in part.

V.  **Motion in Limine No. 61: to Bifurcate the Trial as to Liability and Damages**

Defendant moves to bifurcate the trial into a liability phase and a damages phase. Under Federal Rule of Civil Procedure 42(b), the Court has discretion to bifurcate a trial "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." Fed. R. Civ. P. 42(b). Although the decision to bifurcate is left to the Court's discretion, Rule 42 is read in light of the overarching policy behind the Federal Rules of Civil Procedure to advance the just, speedy, and inexpensive resolution of trials. *William Reber, LLC v. Samsung Elecs. Am., Inc.*, 2004 WL 541851, at *2 (N.D. Ill. Mar. 12, 2004), *vacated on other grounds by William Reber, LLC v. Sony Ericcson Mobile*, 2004 WL 2535074 (N.D. Ill. Sept. 27, 2004). Consequently, bifurcation is the exception, not the rule. *Telewizja Polska USA, Inc. v. EchoStar Satellite Corp.*, 2005 WL 2405797, at *4 (N.D. Ill. Sept. 28, 2005).

Defendant argues that bifurcation is warranted here because evidence of his financial net worth is likely to prejudice the jury's determination of liability. But the Court has already confined this potential prejudice by limiting the amount of financial information that can come in and barring any evidence that might raise the specter of unreported income or assets. Moreover, in a case such as this where the nature of the allegations are so deeply personal and intimate, it is unlikely that the jury would see

Defendant's wealth as a prejudicial tipping point. The burden for showing that bifurcation is warranted rests on the moving party, *Real v. Bunn-O-Matic Corp.*, 195 F.R.D. 618, 620 (N.D. Ill. 2000), and here, Defendant has not met his burden. Accordingly, the motion to bifurcate is denied.

ENTERED:

   s/Edmond E. Chang   
Honorable Edmond E. Chang
United States District Judge

DATE: May 6, 2013